UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IRINA PRUTEANU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:18-CV-01640-AGF |
| ) | |
| TEAM SELECT HOME CARE OF ) | |
| MISSOURI, INC. and ALGONQUIN ) | |
| NURSES HOME HEALTH CARE I, ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Team Select Home Care of Missouri, Inc.'s ("Team Select") motion to dismiss (ECF No. 23) and Defendant Algonquin Nurses Home Health Care I, LLC's ("Algonquin") motion for summary judgment (ECF No. 29). Plaintiff opposes both motions. For the reasons set forth below, Team Select's motion to dismiss will be granted in part and denied in part, and Algonquin's motion for summary judgment will be denied.

## BACKGROUND

On July 30, 2018, Plaintiff filed her lawsuit in state court, asserting claims of discrimination on the basis of sex and pregnancy, in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.055, and outrageous conduct and negligent infliction of

emotional distress under Missouri law.  Specifically, Plaintiff claims that she was employed as an office clerk with Defendants until she was terminated on August 16, 2017, for "excessive absenteeism due to her pregnancy."  Complaint ("Compl."), ECF No. 5 at ¶ 14.  She alleges that during her employment with Defendants, Plaintiff was "subjected to discriminatory treatment" and suffered "intolerable working conditions and a hostile environment in which to work."  *Id.* at ¶¶ 9-10.  Plaintiff contends that her manager, Heather Sessions, exhibited a discriminatory attitude after being informed that Plaintiff was pregnant and had to go on medically-ordered bedrest.  Plaintiff further claims that Ms. Sessions "specifically expressed discontent about being required to do any work because of any employee's maternity leave."  *Id.* at ¶ 17.

On or about September 25, 2017, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR"), alleging that she was terminated after she missed work due to medically-necessary pregnancy-related restrictions.  ECF No. 5-2.  She alleged that she was treated differently and more harshly than other employees with serious medical conditions.

The MCHR issued a notice of right to sue on April 18, 2018, and the EEOC issued a notice of right to sue on May 2, 2018.  Plaintiff filed her complaint on July 30, 2018, and she alleges in her complaint that her lawsuit was "being filed within ninety (90) days of receipt of the two letters."  Compl. at ¶ 7.  On September 27, 2018, Team Select timely removed this action to federal court, and on December 10, 2018, the Court denied Plaintiff's request to remand this action to state court.

2

# ARGUMENTS OF THE PARTIES

In its motion to dismiss, Team Select argues that Plaintiff's MHRA claim is untimely because Plaintiff filed suit more than 90 days after the right to sue letter was issued by the MCHR. It also argues that Plaintiff fails to state a claim of sex and pregnancy discrimination under the MHRA and Title VII because her complaint only contains conclusory allegations rather than specific facts establishing a prima facie case. Lastly, Team Select argues that Plaintiff fails to state a claim of outrageous conduct or negligent infliction of emotional distress under Missouri law.

Plaintiff responds that she did not receive a copy of the MCHR right to sue letter until Plaintiff's counsel requested a copy on the date this lawsuit was filed in state court, and further that there is no proof that Plaintiff ever requested a right to sue letter from the MCHR. She next argues that she sufficiently pled facts to support her sex and pregnancy discrimination claim, as well as outrageous conduct and negligent infliction of emotional distress under Missouri common law.

In reply, Team Select argues that whether Plaintiff expressly requested a right to sue letter from the MCHR is irrelevant. It contends that Plaintiff admits that her lawsuit was filed more than 90 days following the issuance of the right to sue letter and, as a result, her MHRA claims must be dismissed as untimely. It then reiterates its arguments with respect to Plaintiff's failure to state a claim under Title VII and Missouri law.

Defendant Algonquin argues in its motion for summary judgment that it never employed Plaintiff, and thus should not be a party to this litigation. It submits two affidavits supporting its motion. Plaintiff responds that granting summary judgment

would be premature in light of the early stage of this litigation. She also directs the Court to the Missouri Secretary of State's business search page, which indicates a relationship between Algonquin and Team Select. Thus, Plaintiff maintains that discovery on this issue is necessary.

## DISCUSSION

### Team Select's Motion to Dismiss

  a. **Standard of Review**

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Id*. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768–69 (8th Cir. 2012).

  b. **Count I - Title VII claim**

Plaintiff alleges that she was discriminated against on the basis of her sex and pregnancy, in violation of Title VII. As amended by the Pregnancy Discrimination Act of 1978, sex-based discrimination under Title VII includes discrimination based on "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). To establish a prima facie case of discrimination under Title VII in the absence of direct evidence, Plaintiff must establish that (1) she is a member of a protected class, (2) she

met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 973–74 (8th Cir. 2012). "The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016). However, the "[e]lements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit." *Id*. They "are part of the background against which a plausibility determination should be made." *Id.* A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 375 (8th Cir. 2017) (quoting *Blomker*, 831 F.3d at 1055).

Team Select argues that Plaintiff fails to plead a prima facie case of discrimination, and thus her Title VII claim must be dismissed. Specifically, it argues that Plaintiff fails to allege any facts to demonstrate that she was treated differently from similarly situated employees not in her protected class. However, pleading a prima facie case of discrimination is a flexible standard, and a plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker. *Guimaraes*, 674 F.3d at 974.

Here, to the extent Plaintiff alleges that Defendant had policies and practices designed to limit, segregate, classify and discriminate against Plaintiff in ways that jeopardized her career and deprived her of employment opportunities because of her sex and/or pregnancy, the Court agrees that those are nothing more than legal conclusions that will not support a claim. However, Plaintiff's other allegations provide Team Select with fair notice of what Plaintiff's claims are and the grounds upon which they rest. She identifies biased comments made by her manager and states in her charge of discrimination that she has been treated differently and more harshly than other employees with serious medical conditions. *See* Fed. R. Civ. P. 10(c) (copy of written instrument that is exhibit to pleading is part of pleading for all purposes); *Eckert v. Titan Tire Corp.,* 514 F.3d 801, 806 (8th Cir. 2008) (when ruling on motion to dismiss, court should construe complaint liberally in light most favorable to plaintiff). Lastly, Plaintiff claims that her "performance has always been good and she had received no criticism of it prior to her discharge." Compl. at ¶15.

Construing the complaint in Plaintiff's favor, the Court finds that she has sufficiently stated a claim for sex and pregnancy discrimination under Title VII related to her termination.[1] Team Select's motion to dismiss Count I of the complaint will be denied.

---

[1] In Paragraph 10 of the factual allegations of her complaint, Plaintiff also claims that Defendants' actions created a hostile work environment, but the complaint is devoid of any such allegations. Further, Plaintiff does not allege any causes of action based upon hostile work environment. As such, the Court finds no claim for hostile work environment has been stated.

### c. Count II - MHRA claim

The MHRA provides that "[a]ny action brought in court under this section shall be filed within ninety days from the date of the commission's notification letter to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party." Mo. Rev. Stat § 213.111.1; *see also State, ex rel. Martin–Erb v. Mo. Comm'n on Human Rights*, 77 S.W.3d 600, 604 (Mo. 2002) ("The complainant must file any civil action against the person or entity allegedly committing the discrimination within 90 days of the date of the MCHR's letter . . . ."). Although under Title VII a litigant has 90 days from the receipt of the right to sue letter to bring suit (42 U.S.C. 2000e–5(f)(1)), "statutes of limitations contained in the Missouri Human Rights Act have been strictly construed." *Hammond v. Mun. Corr. Inst.*, 117 S.W.3d 130, 138–39 (Mo. Ct. App. 2003), *opinion adopted and reinstated after retransfer* (Nov. 6, 2003) (citations omitted). Accordingly, courts have consistently held that the 90-day period runs from the date that the letter is issued by the MCHR, not the date of receipt. *Id.* ("[T]he law permits no relief . . . on a claim of lack of notice."); *see also Troise v. Mo. Office of Admin.*, No. 2:14-CV-04275-NKL, 2015 WL 5785547, at *5 (W.D. Mo. Oct. 2, 2015) (finding unavailing the plaintiff's claim that he never received the right to sue letter from the MCHR).

Here, Plaintiff did not file suit until July 30, 2018, 103 days after the date of the MCHR's notice of right to sue. Thus, it is undisputed that Plaintiff's lawsuit was filed more than ninety days after the right to sue letter was issued and is untimely. Further, Plaintiff has not argued, nor has the Court been able to identify, any recognized

7

justification to equitably toll the limitations period. Plaintiff has made only a vague argument that "no proof exists that the Plaintiff requested a right to sue letter from the Missouri Commission on Human Rights." ECF No. 27 at 2. This explanation for her untimely filing is an insufficient basis for equitably tolling the statute of limitations. *See Firstcom, Inc. v. Qwest Corp.,* 555 F.3d 669, 675 (8th Cir. 2009) (stating that the party claiming the benefit of an exception to the statute of limitations bears the burden of showing that she has pursued her rights diligently, and some extraordinary circumstance stood in her way).

Moreover, whether Plaintiff requested a right to sue letter is irrelevant. As noted by the Missouri Supreme Court in *Igoe v. Dep't of Labor & Indus. Relations of State of Missouri*, 152 S.W.3d 284, 287 (Mo. 2005), the MCHR may elect not to pursue a complaint and terminate its proceedings by issuing a right-to-sue letter *sua sponte* at any time within the statute of limitations period, without completing the investigation. "Use of the right-to-sue letter to terminate administrative proceedings conserves the commission's resources, because termination by a finding of no probable cause requires an investigation and is subject to judicial review." *Id.* (citing *Martin–Erb*, 77 S.W.3d at 600). Accordingly, the Court will dismiss Plaintiff's MHRA claim with prejudice.[2]

---

[2] Plaintiff states in her briefing: "If the Court feels that the conditions of the [MHRA] have not been fulfilled, then [the MHRA count] only should be dismissed, without prejudice to refiling to determine if the proper request to the MCHR had been made to request the right to sue letter." ECF No. 27 at 3. However, as discussed above, the MCHR has the authority to issue a right to sue letter *sua sponte*. Thus, whether Plaintiff requested a letter is irrelevant. Accordingly, Plaintiff's request that the MCHR claim be dismissed without prejudice will be denied.

## d. Counts III and IV - Missouri law claims

Plaintiff asserts in her complaint two Missouri common law claims: outrageous conduct and negligent infliction of emotional distress. In *Pretsky v. Southwestern Bell Telephone Company*, 396 S.W.2d 566 (Mo. 1965), the Missouri Supreme Court recognized and accepted the tort of outrageous conduct as defined by § 46 of the Restatement (Second) of Torts. The elements of this tort are: (1) the defendant's conduct is extreme and outrageous; (2) the defendant acts in an intentional or reckless manner; and (3) by reason of said acts, plaintiff is caused to suffer severe emotional distress from which bodily harm results. *Frye v. CBS Inc.*, 671 S.W.2d 316, 319 (Mo. Ct. App. 1984) (citing *LaBrier v. Anheuser Ford, Inc.,* 612 S.W.2d 790 (Mo. Ct. App. 1981)). "The conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (internal citation and quotation omitted). "For the third element it is necessary to plead the [emotional] distress is medically diagnosable and medically significant." *Hendrix v. Wainwright Indus*., 755 S.W.2d 411, 412 (Mo. Ct. App. 1988) (naming the tort as intentional infliction of emotional distress).

"The elements of a claim for negligent infliction of emotional distress are: (1) a legal duty of the defendant to protect the plaintiff from injury, (2) breach of the duty, (3) proximate cause, and (4) injury to the plaintiff." *Henson v. Greyhound Lines, Inc.*, 257 S.W.3d 627, 629 (Mo. Ct. App. 2008) (internal citation and quotation omitted). "Additionally, to recover damages, the plaintiff must prove two additional elements: (1)

that the defendant should have realized his conduct involved an unreasonable risk of causing the distress, and (2) that the emotional distress or mental injury is medically diagnosable and of sufficient severity to be medically significant." *Id.*

Here, Plaintiff has failed adequately to plead either of her Missouri common law claims. Specifically, Plaintiff pleads that she suffered mental distress in the form of embarrassment, humiliation, and anxiety, but fails to state anywhere in her complaint that her emotional distress was medically diagnosable and medically significant. *See St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 612 (Mo. Ct. App. 1998) (granting motion to dismiss because "[d]efendant's second amended answer and counterclaim offered a conclusory statement that he suffered shame and humiliation and severe emotional distress but failed to contain facts or allegations from which to infer medically diagnosable and medically significant emotional distress.").

Moreover, the conduct pled by Plaintiff is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gillis v. Principia Corp.*, 111 F. Supp. 3d 978, 987 (E.D. Mo. 2015), *aff'd*, 832 F.3d 865 (8th Cir. 2016); *see also Gibson v. Hummel*, 688 S.W.2d 4, 8 (Mo. Ct. App. 1985) (conduct of employer and supervisor in requiring employee to take a polygraph and involuntarily terminating her employment upon employee's refusal did not amount to outrageous conduct), *c.f. Young v. Stensrude*, 664 S.W.2d 263, 265 (Mo. Ct. App. 1984) (denying motion to dismiss where the plaintiff pled acts of showing a pornographic movie to an unsuspecting female in a room with five men while making obscene remarks to her). Accordingly, Plaintiff's

Missouri law claims of outrageous conduct and negligent infliction of emotional distress will be dismissed.

**<u>Algonquin's Motion for Summary Judgment</u>**

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015). In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *Matter of Citizens Loan & Sav. Co*, 621 F.2d 911, 913 (8th Cir. 1980). Rather, the plaintiff "must identify and provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800 (citation omitted).

Algonquin moves for summary judgment[3] on the grounds that it never employed Plaintiff, and thus, it cannot be liable for her allegedly discriminatory discharge. In support, it points to the Declarations of Mark Tamboli and Eugenia Chicken.[4]

Mr. Tamboli states that he is one of the owners of Algonquin and represents that Algonquin never employed Plaintiff. He further claims that Algonquin has never done business as "Algonquin Nurses Home Health Care I, LLC." Ms. Chicken, Team Select's chief compliance officer, states in her affidavit that Team Select, not Algonquin,

---

[3] Algonquin fails to follow Local Rule 7-4.01, which requires motions for summary judgment to be accompanied by a statement of material facts.

[4] The declarations relied upon by Algonquin were filed by Team Select in support of its memorandum in opposition to Plaintiff's motion to remand.

employed Plaintiff from March 7, 2017 until August 15, 2017. She further claims that Team Select was the entity that terminated Plaintiff's employment. Lastly, she states that Algonquin Nurses Home Health Care I, LLC has no business relationship with Team Select Home Care of Missouri, Inc.

Plaintiff in her response submits her affidavit, in which she states that: (1) she interviewed for her position with Algonquin; (2) the interviewer informed Plaintiff that "there was talk" that Algonquin would be sold; (3) her W-2 was in the name of "Algonquin Home Health Care"; and (4) her termination letter was on letterhead with both Team Select and Algonquin listed. ECF No. 30-1. She submits no documentation in support of her claims.

Plaintiff also points to the Missouri Secretary of State's website, arguing that filings made by Algonquin and Team Select indicate a relationship between the two entities. Plaintiff specifically points to the following filings:

- October 31, 2016 – "Algonquin Nurses Home Health Care I, LLC" files its articles of organization with the Missouri Secretary of State. ECF No. 30-6.
- February 15, 2017 – "Team Select Home Care" files a registration of fictitious name and lists "Algonquin Nurses Home Health Care, Inc." under "owner information." ECF No. 30-7.
- February 23, 2017 – "Algonquin Nurses Home Health Care I, LLC" files a statement of change of registered agent, listing Stephen Tamboli as its new registered agent. ECF No. 30-7.

- November 17, 2017 – "Team Select Home Care" files a registration of fictitious name listing "Algonquin Nurses Home Health Care, Inc." as its 100% owner. ECF No. 30-3.

- November 30, 2017 – "Algonquin Nurses Home Health Care, Inc." files an amendment of articles of incorporation, stating that the new name of the corporation is "Team Select Home Care of Missouri, Inc." ECF No. 30-5.

- April 20, 2018 – "Team Select Home Care" files a registration of fictitious name listing "Team Select Home Care of Missouri, Inc." as the name of its owner. ECF No. 30-4.

Algonquin did not file a reply.

After reviewing the Missouri Secretary of State filings, the Court concludes that there remain issues of material fact with regard to the entity that actually employed Plaintiff and whether any relationship exists between Algonquin Nurses Home Health Care I, LLC, Algonquin Nurses Home Health Care, Inc., and Team Select Home Care of Missouri, Inc. Accordingly, the Court will deny without prejudice Algonquin's motion for summary judgment.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Team Select Home Care of Missouri, Inc.'s motion to dismiss is **GRANTED** in part and **DENIED** in part, as set forth in this Order. Accordingly, only Count I of Plaintiff's complaint remains before the Court. ECF No. 23.

13

**IT IS FURTHER ORDERED** that Defendant Algonquin Nurses Home Health Care, LLC's motion for summary judgment is **DENIED without prejudice**. ECF No. 29.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of February, 2019.