UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IRINA PRUTEANU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:18-CV-01640-AGF |
| ) | |
| TEAM SELECT HOME CARE OF ) | |
| MISSOURI, INC. and ALGONQUIN ) | |
| NURSES HOME HEALTH CARE I, ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on the separate motions to compel arbitration and stay these proceedings filed by Defendants Team Select Home Care of Missouri, Inc. ("Team Select") and Algonquin Nurses Home Health Care I, LLC ("Algonquin"). ECF Nos. 36, 56. For the reasons set forth below, the Court will grant the motions and will stay this case pending arbitration.

## BACKGROUND

Plaintiff Irina Pruteanu brought this action in state court against Team Select and Algonquin, alleging discrimination on the basis of sex and pregnancy, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.055; and claims under Missouri common law. Thereafter, Team Select removed the action to federal court, and Algonquin filed its consent to removal shortly thereafter.

On October 2, 2018, Plaintiff filed a motion to remand, arguing that Team Select's notice made no reference to Algonquin's consent in its filing. The Court denied the motion to remand because Algonquin's consent was timely filed. Then, on October 4, 2018, Team Select filed a motion to dismiss, arguing that Plaintiff's MHRA claim was untimely, that Plaintiff failed to sufficiently plead the two Missouri common law claims, and that Plaintiff failed to state a Title VII claim for sex and pregnancy discrimination. On November 19, 2018, Algonquin filed a motion for summary judgment, arguing that it never employed Plaintiff and thus should not be a party to the litigation.

On February 27, 2019, the Court dismissed Plaintiff's MHRA claim and her Missouri common law claims but concluded that Plaintiff stated a claim for sex and pregnancy discrimination. The Court also denied Defendant Algonquin's motion for summary judgment because there remained issues of fact with regard to the entity that actually employed Plaintiff.

Thereafter, the Court set the matter for a Rule 16 Conference. However, before it took place, Team Select made a written demand for arbitration on Plaintiff. On March 20, 2019, Plaintiff rejected Team Select's demand, resulting in this motion to compel arbitration. The Court cancelled the Rule 16 Conference, to be reset upon the resolution of the motion.

In its motion to compel arbitration, Team Select argues that at the time Plaintiff filed her lawsuit, she was a party to an enforceable Employment Arbitration Agreement ("Arbitration Agreement"), requiring her to arbitrate all covered employment-related disputes, including her Title VII claims in this case.

Algonquin did not file a separate motion to compel arbitration or join Team Select's motion. Accordingly, on October 21, 2019, the Court issued an order directing Team Select and Algonquin to file supplemental briefing addressing the effect of any Court order compelling arbitration on Plaintiff's pending claims against Algonquin. In response, Algonquin filed a separate motion to compel arbitration "to the extent Plaintiff considers Algonquin to be her employer" and incorporating the arguments advanced by Team Select in its motion to compel arbitration and related filings. ECF No. 56.

The Arbitration Agreement at issue in this case provides as follows:

I, Irina Pruteanu (hereinafter "Employee") hereby agree as follows:

As a part of the consideration for Employee's employment by Team Select Home Care (including its affiliates, subsidiaries, successors, assigns, partners, and joint ventures) (hereinafter collectively "Employer") . . . Employer and Employee agree to the following:

1. In the event of any dispute arising under or involving any provision of this Employment Arbitration Agreement or any claim or dispute relating to or arising from Employee's employment with Employer, including, but not limited to: . . . (II) Any and all claims for violation of any federal, state or municipal statute, including, but not limited to, Title VII of the Civil rights Act of 1964, as amended, the Civil Rights Act of 1991 . . . (IV) Any and all claims or disputes arising out of any other laws and/or regulations relating to or arising from Employee's employment; . . . Employee and Employer agree to submit any such claim or dispute to binding arbitration in the county in which the office resides. . . .

ECF No. 37-1. The Arbitration Agreement further provides that it is governed by the Federal Arbitration Act ("FAA") and, on the last page of the Arbitration Agreement, there is a signature line for the employee, as well as a line on which the employee must print her name. The printed name is listed as "Irina Pruteanu," and on the signature line,

there appears a stamp that Plaintiff "DocuSigned" the agreement on March 7, 2017. The DocuSign stamp inserts what appears to be a handwritten signature.

Immediately above the employee signature line appears the following:

Employer:
Team Select Home Care
Michael Lovell, President          June 9, 2016

Plaintiff disputes the validity of the Arbitration Agreement. She argues that Defendants failed to prove that the electronic signature is indeed Plaintiff's signature. She also argues the Arbitration Agreement is unenforceable because Lovell was not authorized to sign the agreement on behalf of Team Select on June 9, 2016. Plaintiff further claims that the Arbitration Agreement does not comply with the Missouri Uniform Arbitration Act, Mo. Rev. Stat. § 435.460, and is therefore unenforceable. Lastly, Plaintiff maintains that Defendants waived their right to compel arbitration because the parties have engaged in substantial litigation and arbitration at this late stage would prejudice Plaintiff.

Team Select replies that on the date Plaintiff began her employment with Team Select, Lovell was President of Algonquin Nurses Home Health Care Inc. Team Select submits a State of Missouri Registration of Fictitious Name signed by Lovell on February 14, 2017—a month before Plaintiff signed the Arbitration Agreement—indicating that Algonquin Nurses Home Health Care, Inc. was registered to do business as Team Select Home Care. ECF No. 49-1. Team Select contends that "Team Select Home Care" is the entity listed on the Arbitration Agreement, and thus Lovell was properly authorized to enter into the Arbitration Agreement on behalf of Team Select.

Team Select also filed a copy of Plaintiff's electronic signature attestation, which is signed by Plaintiff and states that Plaintiff's electronic signature corresponds with her written signature. Team Select states that Plaintiff's electronic signature was used to sign the Arbitration Agreement and is thus valid.

Team Select next argues that the Missouri Uniform Arbitration Act does not apply to arbitration agreements governed by the FAA. Further, Team Select maintains that it did not waive its right to compel arbitration because the case is in its early stages and Plaintiff would not be prejudiced if the Court compelled arbitration. Lastly, Team Select argues that Plaintiff should pay the costs incurred in seeking enforcement of the Arbitration Agreement.

With regard to Algonquin's motion to compel arbitration, Plaintiff makes the same arguments concerning the invalidity and waiver of the Arbitration Agreement. Plaintiff also argues that Algonquin cannot claim the benefit of the Arbitration Agreement because it is not a party to that agreement. Algonquin replies that Plaintiff's lawsuit refers to Team Select and Algonquin as her employer and as a singular, corporate entity, necessitating the resolution of her claims against both Defendants in arbitration. Defendants also argue in their supplemental joint reply memorandum that a non-signatory to the Arbitration Agreement may force a signatory into arbitration under a theory known as alternative equitable estoppel, which is based upon a close affiliation between a signatory and non-signatory to the agreement.

**DISCUSSION**

Validity of the Contract

The FAA "establishes a liberal federal policy favoring arbitration agreements." *M.A. Mortenson Co. v. Saunders Concrete Co.*, 676 F.3d 1153, 1156 (8th Cir. 2012). "A court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004); *see also* 9 U.S.C. §§ 2, 4. There is no dispute that the Arbitration Agreement in this case encompasses Plaintiff's sex discrimination claim, for the agreement broadly applies to all employment related disputes, including claims under Title VII. Therefore, the question before the Court is whether the Arbitration Agreement is a valid contract.

Under Missouri law, "[t]he essential elements of any contract, including one for arbitration, are offer, acceptance, and bargained for consideration."[1] *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014); *see also Bellemere v. Cable-Dahmer-Chevrolet Inc.*, 423 S.W.3d 267, 273 (Mo. Ct. App. 2013) (describing the essential elements of a contract as "(1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation").

"Offer and acceptance requires a mutual agreement. A mutual agreement is reached when the minds of the contracting parties meet upon and assent to the same thing in the same sense at the same time." *Baier v. Darden Rests.*, 420 S.W.3d 733, 738 (Mo.

---

[1] The parties do not dispute that Missouri law governs whether the Arbitration Agreement is valid.

Ct. App. 2014) (citations omitted). A mutual obligation to arbitrate by both parties to an arbitration agreement constitutes consideration for the agreement. *Greene v. Alliance Auto., Inc.*, 435 S.W.3d 646, 652 (Mo. Ct. App. 2014) ("[I]f a contract contains mutual promises, such that a legal duty or liability is imposed on each party as a promisor to the other party as a promisee, the contract is a bilateral contract supported by sufficient consideration."). As the party seeking to compel arbitration, Team Select has "the burden of proving the existence of a valid and enforceable arbitration agreement." *Clemmons v. Kansas City Chiefs Football Club, Inc.*, 397 S.W.3d 503, 506 (Mo. Ct. App. 2013).

Here, the Court finds that Plaintiff agreed to the terms of the Arbitration Agreement. Team Select presented evidence that Plaintiff electronically signed the Arbitration Agreement and even attested that her electronic signature corresponded to her written signature. The Court finds no reason to question the authenticity or legally binding effect of Plaintiff's electronic signature on the affidavit or Arbitration agreement. *See* Mo. Rev. Stat. § 432.230 ("A record or signature shall not be denied legal effect or enforceability solely because it is in electronic form"). Plaintiff never claims that she did not sign the agreement. Instead, she argues that Team Select failed to sufficiently prove that the signature was *her* signature. This claim is self-serving and unsupported by the evidence. Accordingly, the Court concludes that Plaintiff agreed to the terms of the Arbitration Agreement.

Plaintiff next takes issue with Lovell's authority to enter into the Arbitration Agreement on behalf of Team Select. She contends that although Plaintiff's signature is dated March 7, 2017, the date listed next to Lovell's name is June 9, 2016. Plaintiff

contends that Mark Tamboli, not Lovell, was the President of Team Select Home Care at that time. Team Select maintains that the date is a typographical error and that Lovell was authorized to enter into the agreement on the date that Plaintiff signed the contract.

Here, the deficiency identified by Plaintiff is not material to whether the arbitration agreement is valid and enforceable. *See, e.g., In re Branson Mall, Inc.*, 970 F.2d 456, 459 (8th Cir. 1992) (holding that the date the contract was signed was not material to the action seeking to enforce the contract). Plaintiff does not dispute the material terms of the contract, and the evidence suggests that Lovell was authorized to execute the agreement on behalf of Team Select on March 7, 2017.[2] A minor deficiency in the date of signature does not render the Arbitration Agreement invalid. *Gregg v. Georgacopoulos*, 990 S.W.2d 120, 123–24 (Mo. Ct. App. 1999) (holding, in the context of a deed, that "'[a]bsence of a date, or an erroneous or impossible date, is a mere irregularity' and, standing alone, will not invalidate a deed").

Lastly, although not disputed by Plaintiff, the Arbitration Agreement is supported by valid consideration in the form of mutual promises to arbitrate claims. *Karzon v. AT&T, Inc.*, No. 4:13-cv-2202 (CEJ), 2014 WL 51331, at *3 (E.D. Mo. 2014) ("Under Missouri law, a mutual agreement between employer and employee to arbitrate is enforceable.") (citing *McIntosh v. Tenet Health Sys. Hospitals, Inc./Lutheran Med. Ctr.*,

---

[2] Specifically, Lovell was President of Algonquin, doing business as "Team Select Home Care," the entity listed on the Arbitration Agreement. The Arbitration Agreement is binding on Team Select Home Care's affiliates, subsidiaries, successors, assigns, partners, and joint ventures, which includes Defendant "Team Select Home Care of Missouri, Inc."

48 S.W.3d 85, 89 (Mo. Ct. App. 2001)). Accordingly, the Court concludes that the Arbitration Agreement is a valid contract between Plaintiff and Team Select.

Missouri Uniform Arbitration Act

The Court next addresses Plaintiff's argument that the Arbitration Agreement does not comply with the Missouri Uniform Arbitration Act and is therefore unenforceable. The Missouri Uniform Arbitration Act requires any contract compelling arbitration to contain specific language advising the parties that a contract contains an arbitration provision. Mo. Rev. Stat. § 435.460. However, the requirements of the Missouri Uniform Arbitration Act do not apply to an arbitration agreement governed by the FAA because the FAA preempts the Missouri Uniform Arbitration Act. *PR Grp., LLC v. Windmill Int'l, Ltd.*, No. 14-0401-CV-W-BP, 2016 WL 3033617, at *4 (W.D. Mo. Feb. 1, 2016) (listing Missouri cases).

An arbitration agreement is governed by the FAA "when it is (1) in writing, (2) part of a contract or transaction involving interstate commerce, and (3) valid under general principles of contract law." *U-Haul Co. of Missouri v. Davis*, No. 4:18-CV-00843-NKL, 2018 WL 6331707, at *1 (W.D. Mo. Dec. 4, 2018) (citing 9 U.S.C. § 2). The phrase "involving commerce" is "broad" and "coincide[es]" with the extent of Congress' power under the commerce clause. *Id.* (quoting *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 274-75 (1995)). For example, the treatment of out-of-state patients, the receipt of goods from out-of-state vendors, and the receipt of reimbursement from out-of-state and multi-state insurers has been found to constitute

transactions involving commerce. *McIntosh v. Tenet Health Sys. Hosps.*, 48 S.W.3d 85 (Mo. App. 2001).

"The FAA extends to most arbitration agreements covering employment disputes." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004) (citing *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119 (2001)). However, § 1 of the FAA sets forth a number of exemptions; namely, that the FAA shall not apply "to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *Circuit City Stores, Inc.*, 532 U.S. at 113 (quoting 9 U.S.C. § 1). Any argument that that an arbitration agreement in an employment contract is not covered by the FAA must be premised on a particular exclusion. *Id.* at 114.

Here, Plaintiff has not argued that she falls under any exemption under the FAA, and no such exemption appears to apply. *See Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 351 (8th Cir. 2005) (holding that "while the FAA applies to employment contracts, § 1 of the FAA excludes from the Act's coverage 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce'") (citing 9 U.S.C. § 1)). Thus, it appears that the FAA applies to the Arbitration Agreement and preempts the Missouri Uniform Arbitration Act.

Compelling a Non-Signatory to Arbitration

The Court will next address whether Algonquin, which is not a signing party to the Arbitration Agreement, can enforce that agreement against Plaintiff. In *CD Partners,*

*LLC v. Grizzle*,[3] the Eighth Circuit recognized that a nonsignatory with a close relationship with a signatory may compel arbitration because a failure to do so would eviscerate the underlying arbitration agreement. 424 F.3d 795, 799 (8th Cir. 2005); *see also Finnie v. H & R Block Fin. Advisors, Inc.*, 307 Fed. App'x. 19, 21 (8th Cir. 2009) (compelling arbitration based on a close relationship between signatories and nonsignatories); *Astra Oil Co. v. Rover Navigation, Ltd.,* 344 F.3d 276, 279–80 (2d Cir. 2003) (holding that a nonsignatory may compel arbitration against a signatory to an arbitration agreement based on the nonsignatory's close affiliation with the other signatory party to the agreement). The Eighth Circuit also held that a nonsignatory seeking arbitration with an unwilling signatory may do so under a theory of alternative estoppel, which takes into consideration the relationships between the persons, wrongs, and issues raised in the signatory's claims. *CD Partners*, 424 F.3d at 798.

Here, Plaintiff's claims arise out of her employment as an office clerk and termination on August 16, 2017. She identifies both Algonquin and Team Select as her employer, and she specifically pleads that Team Select "sometimes does business as Team Select Home Health Care, and alternatively as Defendant[] Algonquin Nurses Home Health Care I, LLC." ECF No. 5 at 3. Thereafter, she refers to Defendants jointly.

---

[3] Although not raised by the parties, "state contract law governs the ability of nonsignatories to enforce arbitration provisions." *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 833 (8th Cir. 2010). Missouri law applies in this case, and Missouri courts have applied the principles of alternative equitable estoppel set forth by the Eighth Circuit. *See, e.g. Tucker v. Vincent*, 471 S.W.3d 787, 796 (Mo. Ct. App. 2015) (applying *CD Partners* in a Missouri contract case).

The Court finds that the closeness between the parties and the intertwined nature of the claims against Defendants requires Plaintiff to be compelled to participate in arbitration with non-signatory Algonquin. Indeed, Plaintiff previously argued the close relationship between Team Select and Algonquin in her opposition to Algonquin's motion for summary judgment, submitting documents from the Missouri Secretary of State's Business Search website reflecting the relationship between Defendants and how they are interrelated. *See* ECF No. 30. Further, Plaintiff asserts her claims against both Defendants jointly, in part due to the confusion surrounding the formal identify of her employer. Moreover, Plaintiff signed the Arbitration Agreement and specifically agreed to arbitrate all disputes and claims arising out of her employment as an office clerk, which is the subject of this lawsuit. Thus, the Court concludes that Algonquin may seek a Court order compelling arbitration pursuant the Arbitration Agreement.

Waiver

Plaintiff argues that both Team Select and Algonquin have waived their right to arbitration. "Parties can waive their contractual right to arbitration even if their agreement to arbitrate is valid and enforceable." *Schultz v. Verizon Wireless Servs., LLC*, 833 F.3d 975, 978 (8th Cir. 2016). Courts, rather than arbitrators, decide whether a party has waived its right to arbitrate. *RPM Ecosystems Ithaca, LLC v. Lovelace Farms, Inc.*, No. 4:09-CV-1512 (CEJ), 2014 WL 12789178, at *3 (E.D. Mo. Oct. 17, 2014) (citing *N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722, 728 (8th Cir. 1976)). A party waives its right to arbitrate when the party "(1) knew it had a right to arbitration, (2) acted

inconsistently with such right, and (3) prejudiced [the opposing party]." *Hooper v. Advance Am.*, 589 F.3d 917, 920 (8th Cir. 2009) (citations omitted).

"A party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right." *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085, 1090 (8th Cir. 2007) (quotation and alterations omitted). "A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." *Id.*

Prejudice occurs when the parties litigate "substantial issues on the merits, or when compelling arbitration would require a duplication of efforts." *Hooper*, 589 F.3d at 923 (quotation omitted). However, "[d]elay in seeking to compel arbitration does not itself constitute prejudice." *Stifel, Nicolaus & Co. Inc. v. Freeman*, 924 F.2d 157, 159 (8th Cir. 1991). The prejudice requirement must be demonstrated "even when the party who belatedly seeks to arbitrate commenced the litigation." *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1119 (8th Cir. 2011). In those situations, "whether inconsistent actions constitute prejudice is determined on a case-by-case basis." *Stifel*, 924 F.2d at 159.

Here, the Court concludes that Defendants have not substantially invoked the litigation machinery. Although the Court has addressed some issues concerning the sufficiency of Plaintiff's allegations, it has not delved into the merits of Plaintiff's claims. *Cf. Hooper*, 589 F.3d at 917 (holding that the defendant waived its right to arbitrate because it filed an "extensive" motion to dismiss that required the district court to

navigate through "uncharted territory in Missouri's consumer protection laws"). Moreover, the parties have not participated in a scheduling conference, exchanged initial disclosures, or engaged in discovery.

Furthermore, Plaintiff has failed to demonstrate that she will suffer prejudice if the case is sent to arbitration. Plaintiff claims that her attorney has spent "hours upon hours" responding to the motions filed by the Defendants to this action. ECF No. 43 at ¶ 12. However, this is insufficient to establish prejudice. *See Stifel*, 924 F.2d at 159 (holding there was no prejudice even where the plaintiff invoked the judicial process and there was some pretrial litigation activity, including primarily pleadings and discovery); *cf. Baker v. Anytime Labor-Kansas LLC*, No. 4:16-00447-CV-RK, 2017 WL 2880559, at *2 (W.D. Mo. July 6, 2017) (finding prejudice where the plaintiffs litigated the class arbitration issue on the merits and holding that compelling arbitration on the same issue would require a duplication of effort).

The Court has considered the length of delay and the expenses incurred from participating in the litigation process, *Fair v. Commc'ns Unlimited Inc.*, No. 4:17 CV 2391 RWS, 2018 WL 4253967, at *2 (E.D. Mo. Sept. 6, 2018), and it concludes that Plaintiff has not demonstrated that she will be prejudiced if the Court were to compel arbitration. *See Call v. Harris Stowe State Univ.*, No. 4:17CV1548 HEA, 2018 WL 1470453, at *2 (E.D. Mo. Mar. 26, 2018) (holding that the defendants had not waived their right to enforce the arbitration agreement even though litigation had been pending for over three years and the parties had engaged in discovery). For these reasons, the

Court will grant Defendants' separate motions to compel arbitration and stay these proceedings.

Request for Attorney's Fees

Defendants seek the attorney's fees incurred in bringing the motions to compel arbitration, arguing that Plaintiff's rejection of Team Select's demand for arbitration was "nonsensical" and "unsupported." ECF No. 37. However, the Court finds that Plaintiff presented non-frivolous arguments in its opposition to the motions. Accordingly, an award of attorney's fees is not appropriate here. *See Isuzu Motors Ltd. v. Thermo King Corp.*, No. CIV 05-2174 JRT/JJG, 2006 WL 2255436, at *3 (D. Minn. Aug. 7, 2006) (denying attorney's fees because the plaintiff proffered a non-frivolous interpretation of the arbitration agreement).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Team Select Home Care of Missouri, Inc's motion to compel arbitration and stay proceedings is **GRANTED**. ECF No. 36.

**IT IS FURTHER ORDERED** that Defendant Algonqin Nurses Home Health Care I, LLC's motion to compel arbitration and stay proceedings is **GRANTED**. ECF No. 51.

**IT IS FURTHER ORDERED** that this case is **STAYED** and shall be deemed closed administratively, for statistical purposes only, pending a resolution of the arbitration.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report within **14 days** of a decision regarding the outcome of the arbitration proceedings.

```
                                    _____
                                    AUDREY G. FLEISSIG
                                    UNITED STATES DISTRICT JUDGE
```

Dated this 26th day of November, 2019.